UNITSD STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JONATHON SMITH                    :           CIVIL ACTION NO. 11-cv-1320


VERSUS                            :           JUDGE FOOTE

WARDEN, LOUISIANA STATE
PENITENTIARY                      :           MAGISTRATE JUDGE KAY


<u>REPORT AND RECOMMENDATION</u>

Before the court is an application for writ of *habeas corpus* filed under 28 U.S.C. § 2254 by the petitioner, Jonathon Smith, a prisoner in the custody of the Louisiana Department of Corrections. The matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court.

For the reasons discussed herein, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

This matter arose from a September 4, 2003, incident in which the petitioner and two other men approached James Robinson in front of his residence and, armed with several firearms, demanded that he turn over to them approximately five hundred dollars in cash that he had on his person. Doc. 21, att. 1, pp. 6-7. Witnesses on the scene included Robinson's neighbor, Chameka Black, her boyfriend Breon Kelly, and Marcus George (George I), an acquaintance of Robinson's. Black and Kelly were on the front porch of their home and went inside soon after noticing the weapons. George was with Robinson during the robbery. Within two weeks of the incident the

-1-

petitioner and the two other perpetrators were arrested after George I and Robinson made positive line-up identifications of the three robbers, all of whom they had known for several years. *Id.*

Despite his initial identification, George I did not testify at trial. The petitioner was convicted of armed robbery and, after being adjudicated a second felony offender, was sentenced to fifty-five years at hard labor with a five year enhancement for the use of a firearm. *Id.* at p. 7. Thereafter, the petitioner and his co-defendants filed two Motions for a New Trial, one raising a claim of insufficiency of the evidence and another asserting the alleged discovery of new evidence. They also filed a motion for Post-Verdict Acquittal. The primary disputes at issue were Marcus George's identity and his alleged unavailability at trial. At hearing on the motions, a man named Marcus George (George II) testified that he did not know the victim, Robinson, and that he had not witnessed any robbery. *Id.* at p. 8.

Robinson testified at the hearing and claimed that George II was not the same Marcus George that was with him at the time of the robbery and further indicated his belief that George I had moved away due in part to alleged threats from the robbers and their acquaintances. *Id.*   A detective who had obtained a recorded statement from George I shortly after the incident also testified that George I and George II were not the same person. *Id.* The trial court denied all motions finding that they lacked merit. *Id.*

The petitioner then appealed his conviction and sentence but both were affirmed with the exception that the appeals court reversed the five-year sentence enhancement. *State v. Smith*, (La. App. 2d Cir. 7/26/06), 936, So.2d 255. The Louisiana Supreme Court denied writs. *State v. Smith*, 2006-2113 (La. 3/30/07), 953 So. 2d 60 and 2006-2179 (La. 4/5/07), 954 So. 2d 131.

Thereafter, the petitioner filed for post-conviction relief which the state district court denied on the merits. Both the Louisiana Second Circuit Court of Appeal and the Louisiana Supreme Court subsequently denied writs. Doc. 21, att. 10, pp. 45-48, 85, 133.

Petitioner filed the instant application for a writ of *habeas corpus* in this court on July 11, 2011.  He raises the following seven claims: (1) that he received ineffective assistance of counsel, (2) that the State commented on a prior judicial determination of the sufficiency of the evidence during opening statements, (3) that the trial court failed to order a mistrial when the State made direct references to other crimes during the direct examination of a witness, (4) that there was insufficient evidence to support his conviction, (5) that the trial court failed to grant a mistrial based on that insufficiency of evidence, (6) that the trial court erroneously denied his motion for post-verdict judgment of acquittal, and (7) that the trial court wrongfully denied his motion for new trial based on new evidence. Doc. 10, p. 2. These are the exact same claims for relief which were respectively denied by the state district court and the Louisiana Court of Appeal for the Second Circuit, both on direct appeal and in petitioner's subsequent application for post-conviction relief.  Accordingly, all claims were adjudicated on the merits at some point in these proceedings. Doc 1, att. 1, p. 7.

In response, the respondent raises arguments both procedural and substantive in nature. First, he argues that as to claims (2), (3), and (7) as listed above, the petitioner has not exhausted his state court remedies because in all prior state proceedings, both on direct appeal and on his application for post-conviction relief, he failed to advance a constitutional basis for those claims and thus failed to alert the state courts to the federal nature of said claims as required under 28 U.S.C. § 2254(b)(1). Secondly, respondent addresses each claim on the merits asserting that for

various reasons (see discussion below), the petitioner is not, in any event, entitled to the relief he seeks.

## II.
### LEGAL STANDARD

### A. *Federal* Habeas *Review*

Federal courts of the United States have jurisdiction to entertain applications for writs of *habeas corpus* on behalf of a person in State custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The federal *habeas* statute requires a petitioners seeking such relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1)(A). Nonetheless, in the interest of judicial economy, the statute also allows federal courts the discretionary ability to deny an application on the merits notwithstanding an applicant's failure to exhaust his or her state remedies if the unexhausted claim is "patently without merit." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Coningford v. Rhode Island*, 640 F.3d 478, 483-84 (1st Cir. 2011) (citing *Granberry v. Greer,* 107 S.Ct. 1671, (1987)).

Here, the respondent reminds us that several of the petitioner's claims (namely claims (2), (3), and (7) as noted above) have not been exhausted due to his failure to alert the state courts as to the federal nature of those claims by fairly presenting them to the highest state court. *See* Doc. 21, att. 1, pp. 11-13. While we find it clear from the record and the instant petition that the respondent is correct, pursuant to 28 U.S.C. § 2254(b)(2), we will nonetheless exercise our discretion to consider these because for the reasons discussed herein, we find them to be clearly meritless and they should be disposed of once and for all.

Because the state courts adjudicated some of the petitioner's claims on the merits, this court reviews those decisions under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That standard provides that where the state court has reached the merits of a constitutional claim, a writ of *habeas corpus* shall not be granted with respect to that claim unless the adjudication of the claim resulted in a decision that was either: (1) contrary to clearly established federal law or involved an unreasonable application of that law; or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

 Under the first standard, a petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (*per curiam*). The decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

Under the second standard, it is insufficient that a petitioner show that the state court erred in its factual determination; he must demonstrate that the factual determination was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939-40 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner must show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S. Ct. 969, 975-76 (2006).

Some of the petitioner's claims were denied at the state level on procedural grounds and this implicates the procedural default doctrine which operates to bar federal *habeas* corpus review

when a state court declines to address a petitioner's federal claims on the merits because the petitioner has failed to follow a state procedural rule. *Coleman v. Thompson,* 111 S. Ct. 2546, 2553-54 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 2564-66. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.*

In order to determine whether a procedural bar exists, a federal court must look to the last reasoned state court decision regarding the claim for relief. Moreover, "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Ylst v. Nunnemaker*, 111 S. Ct. 2590, 2593-94 (1991).

The doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1996). However, often times a state court may not explain the basis for its decision. To determine whether the court made a ruling on the merits or on procedural grounds, the court can look to (1) the text of the state court order, and (2) the circumstances surrounding the order. *Wilson v. Moore*, 178 F.3d 266, 273–74 (4th Cir. 1999).

A procedurally defaulted claim is not subject to federal *habeas* review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 111 S. Ct. at 2564-66.

In order to establish cause for a procedurally defaulted claim, the petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier,* 106 S. Ct. 2639, 2645-46 (1986). To establish prejudice for such a claim, the petitioner must first demonstrate that the claim arises out of an error committed at trial. *Id*. at 2648. The petitioner must then show "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 102 S. Ct. 1584, 1596 (1982) (emphasis in original). The petitioner cannot establish prejudice for a procedurally defaulted claim when the record includes overwhelming evidence of guilt. *See Wainwright v. Sykes,* 97 S. Ct. 2497, 2508 (1977).

### III.
### PETITIONER'S CLAIMS

#### A.  *Ineffective Assistance of Counsel*

In the instant *habeas* petition, the petitioner makes multiple allegations which raise the issue of ineffective assistance of counsel. He asserts that his trial counsel was deficient when he failed to object to statements made by his co-defendant's counsel, John Cucci, to the effect that "its obvious they are guilty of something or we wouldn't be here…" during opening statements, and also for his counsel's failure to properly investigate his case. Doc. 1, att. 1, p. 9.

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient or amounted to serious error *and* that prejudice resulted. *Strickland v. Washington* 104 S. Ct. 2052, 2065-68 (1984). As we noted above, the state courts previously reached the merits of these claims and applied the *Strickland* standard to the instant case. In considering his application for post-conviction relief, the state district court found that Mr. Cucci's statements were not only wholly inconsistent with the petitioner's allegation but

that the statements he actually made were "not beyond the scope and extent of Mr. Cucci's discretion to use legitimate inferences in his opening statement[.]" The state district court concluded that "an objection [by defendant's counsel] would have been futile." Doc. 21, att. 10, pp. 46-47. We do not find the district court's determination objectively unreasonable in light of the evidence presented to it.

The petitioner's next allegation of ineffective assistance concerns the alleged failure of his attorney to conduct an adequate investigation of his case. Specifically, he claims that a "full investigation…would have shown that [petitioner's] arrest, and conviction was obtained with falsified police reports and with fabricated statements from someone *posing* as Marcus George." Doc. 1, att. 1, p. 11 (emphasis in original). Reaching the merits of this claim as well, the state district court found that the petitioner had provided no evidentiary support "for the conclusory allegation that trial counsel failed to conduct a reasonable investigation" and that he had not offered any concrete facts of any falsified police report or fabricated statements. Doc. 21, att. 10, p. 47. The court further explained that:

> The record and evidence reflect that a man claiming to be Marcus George witnessed the offense in question, identified Petitioner…in a police photo-lineup and gave recorded statements to the police regarding the crime. However, this man could not be located to testify at the trial. At Petitioner's Motion for New Trial hearing, a man named Marcus George testified that he did not witness the crime.  However, the investigating detective testified that the testifying witness was not the man he conducted interviews with after the offense and the trial court allowed the original "Marcus George" police statements to be admitted into evidence. The trial court denied the motion and Petitioner asserted the denial as an assignment of error in his direct appeal. The Second Circuit held that the trial court did not err and this new witness's testimony was irrelevant and "could not possibly have affected the verdict," which is inherent to the *Strickland* test.

*Id.* Again, petitioner has not shown us, and indeed we cannot see, how these findings were in any way objectively unreasonable or how they are contrary to clearly established federal law.

Finally, the petitioner makes general allegations regarding his counsel's failure to object throughout trial. On consideration of his application for post-conviction relief, the state district court addressed this issue by noting the "strong presumption that trial counsel exercised reasonable professional judgment" and the petitioner's failure to provide any evidentiary or factual support to rebut that presumption. Doc. 21, att. 10, p. 48. Similarly, in the petition before us, he has done nothing more than raise the allegation, and we cannot conclude that the findings of the state court were unreasonable or contrary to law.

### B. Prosecution's Alleged Improper Comments During Opening Statements; Failure of Defense to Object

Just as he did on direct appeal to the Second Circuit, the petitioner takes issue here with a statement made by the prosecuting attorney during opening statements wherein it was stated:

> What, ordinarily, happens then is you get a warrant. And warrants were gotten in this case for all three Defendants, and they were subsequently arrested on different dates.
>
> In order to get a warrant, you have to have what's called probable cause to arrest them.

Doc. 21, att. 7, p. 22.  Petitioner asserts that his constitutional rights were violated because "there were no issues at trial concerning the validity of the arrest warrant…[and]…prejudice occurred when the prosecutor states that you have probable cause to get a warrant." Doc. 1, att. 1, p. 13.

The Second Circuit addressed this claim on direct appeal and found that, pursuant to La. C. Cr. P. Art. 841, the alleged error was not reviewable because Smith had failed to object to it during trial. Thus, the state court relied solely on a procedural default, Louisiana's contemporaneous objection rule, to deny the claim.  As we noted above, "[t]he rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' [for the default] and

'prejudice,' deny habeas relief because of the procedural default." *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) (citing *Cook v. Lynaugh,* 821 F.2d 1072, 1077 (5th Cir.1987)); See also *Steward v. Cain*, 259 F.3d 374, 377 (5th Cir. 2001) ("…when a state court relies upon [Louisiana's] contemporaneous objection rule to reject a prisoner's claims, federal habeas review of those claims is [generally] improper.")

In an apparent attempt to address procedural default, the petitioner merges the two separate issues of procedural default and exhaustion by making three general arguments: (1) that good cause exists for the default because "it was not petitioner who [failed to exhaust his claim by fairly presenting the federal nature of his claims to the highest state court], but rather the [Louisiana Appellate Project] which the State of Louisiana retained to represent petitioner….who is responsible for failing to federalize petitioner's claims so as to give the State of Louisiana a tactical advantage…[;]" (2) that his failure to contemporaneously object at trial "meets the 'cause' and 'prejudice' requirements of *Francis v. Henderson*, 96 S. St. 1708 (1976)…[because he] establishes the elements of *Francis*[;]" and (3) that petitioner sufficiently demonstrated good cause and prejudice because he "sufficiently raised and argued counsel's pre-trial ineffectiveness, trial post-trial ineffectiveness which immunizes petitioner from the applicability of procedural default." *See* Doc. 24, p. 4-6.

The first argument is petitioner's attempt to address the government's contention that he has failed to exhaust his remedies by failing to alert the state courts as to any federal bases for his underlying claims. In doing so, petitioner is in essence claiming that it is the fault of his counsel, not his own fault that resulted in his failure to assert a constitutional basis for any of the claims discussed in this section and in section III *C*. of this opinion. He is alleging some sort of deliberate collusion or conspiracy between the Louisiana Appellate Project and the State of Louisiana

whereby the grounds for his claims were intentionally limited to state law on appeal in order to bar them from review.  Petitioner provides no evidence whatsoever to support this allegation and it does not address the relevant inquiry we are now called upon to consider in this case, *i.e.* whether good cause existed for the failure to object at trial.

That issue is addressed more directly by petitioner's second argument which is entirely conclusory. He claims that he has established both cause and prejudice for his failure to object at trial because he has established the elements of *Francis*. That argument, quite frankly, makes no sense. In *Francis* a petitioner sought collateral relief from a state court six years after his conviction for felony-murder on the grounds that there had been an unconstitutional lack of ethnic diversity in the grand jury that indicted him. The court held that the petitioner had waived his right to raise that issue because he had failed to object prior to trial as was required by Louisiana law. Thereafter, a federal *habeas* court granted the writ, but was reversed when the Fifth Circuit, relying on *Davis v. United States*, 93 S. Ct. 1577 (1973), held that in the absence of a showing of actual prejudice (as was the case in *Francis*), the petitioner's failure to timely object to the composition of the grand jury as required by state law operated to bar federal *habeas* review.  *Francis*, 96 S. Ct. at 1709-10.

The question that the Supreme Court was called upon to consider was "whether a state prisoner who failed to make a timely challenge to the composition of the grand jury that indicted him could after his conviction bring that challenge in a federal habeas corpus proceeding," *Francis*, 96 S. Ct. at 1709.  Further specifying that question, the Court indicated that

> The issue, as in the *Davis* case, goes...to the appropriate exercise of [a court's power to entertain applications for *habeas* writs]. This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power. The question to be decided is whether the circumstances of this case are such as to invoke the application of those considerations and concerns for the orderly administration of criminal justice.

*Id*. at 1710.  Holding that the rule in *Davis* had been correctly applied, the Court affirmed the Fifth Circuit's ruling and reiterated the principle of the procedural default doctrine that, absent a showing of good cause and actual prejudice, federal *habeas* review is unavailable to a petitioner who fails to follow state procedural rules and timely object. *Id*. at 1711.

Beyond a general re-affirmation of the procedural default doctrine, however, the Court in *Francis* does not at any point in the opinion articulate what is required for an adequate showing of either "good cause" or "actual prejudice," nor does it make a single reference to any elements required to be satisfied in making such a showing. Petitioner's bare assertion that he satisfies these so called elements in *Francis* is baseless as is his claim that he meets "cause" and "prejudice" requirements allegedly provided in that case.

Petitioner's third argument that the procedural default doctrine is somehow inapplicable to him because he raised and argued claims of ineffective assistance of counsel is similarly unfounded.  He cites no law to support the contention, and we can find no such precedent on our own. However, to the extent that petitioner is attempting to re-urge ineffective assistance, the United States Supreme Court has addressed the issue of the extent to which failure of counsel to abide by a procedural rule constitutes "cause" for the default.

> [C]osts associated with an ignorant or inadvertent procedural default are no less than where the failure to raise a claim is a deliberate strategy: It deprives the state courts of the opportunity to review trial errors.  When a federal habeas court hears such a claim, it undercuts the State's ability to enforce its procedural rules just as surely as when the default was deliberate. [*Murray v. Carrier*] 477 U.S., at 487, 106 S.Ct., at 2644–2645.  We concluded: "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Id.,* 477 U.S., at 488, 106 S.Ct., at 2645.

*Coleman*, *supra*, at 2566, holding modified by *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  Insofar as we have already concluded that petitioner's counsel was not ineffective under the *Strickland* standard then counsel's conduct will not be considered cause for the default.

Nor do we conclude that petitioner has shown any prejudice resulting from his inability to go forward on the merits of this procedurally defaulted claim.  As we note below the record is replete with evidence of petitioner's guilt.  We therefore conclude that this issue has been procedurally defaulted and should be dismissed.

### C.  *Improper Direct Examination Eliciting Statements By a Witness About Other Crimes*

During the prosecutor's direct examination of the victim, Robinson stated that he had moved since the robbery and that his move was because of the robbery. When asked whether he was scared to testify, Robinson replied in the affirmative and, when he was then asked why he was scared, he said "[b]ecause they kept intimidating my family and me." Doc. 21, att. 7, pp. 78-79.

The petitioner asserts that Robinson's statements implicate another crime, specifically, a violation of La. Rev. Stat. 14:129.1 which prohibits the intimidation of "a witness or a member of his immediate family with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding." La. Rev. Stat. Ann. 14:129.1. As such, he contends that the trial court committed reversible error by failing to order a mistrial as required by La. C. Cr. P. art. 770[1] and further asserts that that failure was a violation of clearly established federal law under *Old Chief v. U.S.*, 117 S.Ct. 172 (1997). *See* Doc. 1, att. 1, pp. 13-15.

---

[1] Upon motion of a defendant, *a mistrial shall be ordered* when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

.…

(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; . . .

La. Code Crim. Proc. Ann. art. 770

On direct appeal the Second Circuit found that the defendant had failed to object at trial to the alleged improper questioning and held that the issue had accordingly been waived. Going further, however, the court found in the alternative that La. C. Cr. P. art. 770 was inapplicable because it applies only to statements made "by the judge, district attorney, or a court official" and not to statements made by witnesses. La. C. Cr. P. art. 770; See *Smith*, 936 So. 2d at 262-64.  The court further pronounced that, in cases where such statements are made by witnesses, La. C. Cr. art. 771 controls and, under that article, courts are required "upon the request of the defendant…[to] promptly admonish the jury to disregard [an irrelevant, immaterial, or potentially prejudicial] remark." *Smith*, 936 So. 2d at 262-64 (citing La. C. Cr. art. 771). While the article does permit a defendant to move for a mistrial, whether a court will grant said mistrial is entirely permissive and may only be ordered if the court "is satisfied that an admonition is not sufficient to assure the defendant a fair trial.  The court noted both the petitioner's failure to object and his failure to request an admonition under La. C. Cr. P. art. 771 rendered the issue "not properly preserved for review" and in any event were "without merit[.]" *Id.*

For the same reasons noted in the section above we conclude that the merits of the issue raised by petitioner cannot be reviewed by this court as they are procedurally defaulted and, once again, petitioner has shown neither good cause for his failure to object nor any prejudice resulting therefrom that should cause us to overlook the default.

Even if we were to look past the procedural default, however, and address the merits of the claim the result would be the same.

Petitioner claims that the trial court's failure to declare a mistrial is a clear violation of federal law as provided in *Old Chief v. U.S.*, 117 S.Ct. 644 (1997).  Petitioner quotes a quote within that decision that "[a]lthough . . . 'propensity evidence' is relevant, the risk that a jury will convict

for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment – crates a prejudicial effect that outweighs ordinary relevance." *Id.* at 650 quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982).  Petitioner maintains that "failure of the Trial Court to order a mistrial [following the victim's testimony] is reversible error."  Doc. 1, p. 15.

      This court entertains applications for writs of *habeas corpus* "in behalf of a person in custody pursuant to the judgment of a State court only the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).   *Old Chief*, relied upon by plaintiff, does not stand for the proposition that admission of any information related to some other crime is a violation of the United States Constitution so that any such admission followed by a conviction should lead to issuance of a writ.  In *Old Chief,* which was on direct appeal following conviction of a federal crime, the defendant had been charged with a violation of 18 U.S.C. § 922(g)(1) which prohibits possession of a firearm by anyone with a prior felony conviction.  In order to prove the elements of that crime it is incumbent upon the government to establish that the defendant does in fact have a prior felony conviction.  The issue before the court in *Old Chief* was whether there was an abuse of discretion when a district court refused to accept a concession by the defendant that he in fact had a prior felony conviction, thus necessitating introduction into evidence the full record of the prior conviction.  The Supreme Court in *Old Chief* found that the district court's refusal to accept the defendant's concession was an abuse of discretion.  It was a consideration of an evidentiary matter and the high court agreed to consider the case "because the Courts of Appeals have divided sharply in their treatment of defendants' efforts to exclude evidence of the names and natures of prior offenses in cases like this."  *Id.* at 649.

So, while *Old Chief* uses the words quoted by plaintiff, it is not a pronouncement or recognition by the Supreme Court of any constitutionally protected right, the violation of which has amounted to this petitioner being held in custody in violation of that right.   No clearly established federal law requires a state court to *sua sponte* declare a mistrial when evidence of another crime has been admitted.   We recommend that petitioner's request for a writ on this claim also be denied.

### D.  Insufficiency of Evidence

Petitioner's claims (4), (5), and (6) (as listed *supra* at p. 3) in the instant petition are the same as his third, fourth, and fifth assignments of error on direct appeal. These claims concern the alleged failure of the State to prove guilt beyond a reasonable doubt based on an insufficiency of the evidence. As such, and on those grounds, the petitioner asserts not only that his conviction was improper but also that the trial court erred in denying his post-trial motions for a new trial and for a post-verdict judgment of acquittal. Doc. 1, att. 1, p. 16.   In support of his claim the petitioner specifically takes issue with the testimony given by Chameka Black and alleges various inconsistencies and contradictions between Ms. Black's testimony and the testimony provided by Breon Kelly and James Robinson. He claims that Ms. Black did not actually witness the events in question. He asserts that he is entitled to *habeas* relief because the alleged discrepancies in Black's testimony indicate a clear insufficiency of the evidence to support a finding of guilt beyond a reasonable doubt.  *Id.* at p. 16-18.

As the petitioner and the respondent correctly articulate [*see* doc. 1, att.1, p.17], the criterion by which the validity of a state criminal conviction must be tested in a federal habeas proceeding with respect to sufficiency of the evidence is that the reviewing court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia*, 99 S. Ct. 2781, 2789 (1979) (citing *Johnson v. Louisiana,* 92 S. Ct. 1620, 1624-25 (1972)) (emphasis in original).   These claims of insufficiency of evidence were considered by the Second Circuit on the merits which appropriately applied the *Jackson v. Virginia* standard on direct review.   After consideration of the record as a whole the Second Circuit considered the evidence and found that:

> In the instant case, the victim positively identified the three Defendants, both in a pre-trial lineup and at trial. The victim was personally acquainted with all three Defendants and their appearance and had ample time to observe the men during the robbery. The victim said that all three men were armed with firearms during the robbery, that Grant forced him to hand over his money and that all three Defendants were acting in concert to commit the crime. This testimony describes all of the elements of the crime of armed robbery committed by all three Defendants and further shows that each Defendant was armed with a firearm. The jury was called upon to evaluate the credibility of the victim and decided to accept his version of the events as true. Nothing in the victim's testimony presented an internal inconsistency or an irreconcilable conflict with physical evidence, so the jury's decision to credit his testimony was not manifestly erroneous or clearly wrong.

*Smith*, 936 So.2d at 260-61.   Thus the court found that James Robinson's testimony alone was sufficient to convict the petitioner regardless of the testimony provided by Ms. Black. The petitioner's references to the insufficiency of Ms. Black's testimony are, therefore, irrelevant.

Having concluded that the state court adjudicated these claims on the merits after appropriate application of federal law, we are bound by the deferential standard articulated in 28 U.S.C. § 2254(d). See *Corwin* 150 F.3d at 471.   Applying that deferential standard we cannot conclude that the state appellate court's findings were objectively unreasonable and therefore we recommend that petitioner's request f*or habeas* relief in this regard be denied.

### E.  *Motion for New Trial Based on Newly-Discovered Evidence*

Petitioner also re-asserts here his sixth assignment of error on direct appeal, namely that the trial court erred in denying his motion for a new trial based on the alleged discovery of new evidence. Doc. 1, att. 1, p. 18. While petitioner does not clearly articulate what "new" evidence he is referring to, he apparently contends (1) that George I and George II are the same person, (2) that this Marcus George who had identified petitioner in a photo lineup after being interviewed by police shortly after the robbery later testified at post-trial hearing on the motion that he had not, in fact, witnessed any robbery, and (3) that if this Marcus George had been subpoenaed by the State to appear at trial he "would have testified that he knew nothing of the alleged crime [and that testimony] would probably have changed the verdict." Doc. 1, att. 1, p. 20.

Finally, the petitioner generally alleges that the State improperly suppressed evidence favorable to him in violation of *Brady v. Maryland*, 83 S. Ct. 1194 (1963) by intentionally failing to procure the testimony of this Marcus George (i.e. George II—who did not witness the crime) until after the trial had concluded. Doc. 1, att. 1, pp. 19-20. Other than in his first writ of review with the Louisiana Supreme Court, which was denied without assigning reasons, this claim was not raised in any other state court proceeding. Thus it is presented here for the first time. *See* Doc. 21, att. 8, pp. 184-185.

The petitioner's allegation with respect to the trial court's supposed improper denial of his motion for a new trial does not present a federal constitutional issue for us to consider.  It was adjudicated on the merits by the state courts applying Louisiana law. Absent a federal constitutional question, federal courts do not disturb the findings of state courts applying state law. As even the U.S. Supreme Court has "stated many times…'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, S. Ct. 475, 479-80 (1991) (citing *Lewis v. Jeffers,*

110 S. Ct. 3092, 3102 (1990)); *see* also *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Thus, we do not consider it here.

As to the petitioner's *Brady* claim, we agree with the respondent that the issue was never presented to either the state district court or to the Second Circuit on appeal, and thus that the petitioner "failed to exhaust his state court remedies" as to that claim pursuant to 28 U.S.C. § 2254(b)(1). As the Fifth circuit has stated:

> Habeas petitioners must exhaust state remedies by pursuing their claims through *one complete cycle of either state direct appeal or post-conviction collateral proceedings*. The exhaustion requirement means that a habeas petitioner must fairly present the substance of his claim to the state courts.

*Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004) (internal citations and quotations omitted). Here, petitioner has not done so.

Nonetheless, even on the merits the petitioner is not entitled to relief.  While *Brady* does indeed impose a duty on prosecutors to disclose evidence favorable to an accused upon request…where the evidence is *material* either to guilt or to punishment[,]" 83 S. Ct. 1194, 1196-97 (emphasis added), since adopting that rule, the U.S. Supreme Court has significantly limited its effect by narrowly defining what constitutes "material" evidence.

For instance, in *United States v. Bagley*, 105 S.Ct. 3375 (1985), despite stating that the *Brady* rule broadly applied to both impeachment evidence and exculpatory evidence, the Court reaffirmed an earlier post-*Brady* precedent wherein it had acknowledged that "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial…'to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.'" 105 S. Ct. at 3379-81 (quoting *United States v. Agurs*, 96 S. Ct. 2392, 2399-400 (1976).  Most notably,

however, the Court concluded its opinion by defining the standard for materiality of evidence as implicated under *Brady*. "[E]vidence is material," said the Court, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different…[and a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 105 S. Ct. at 3383-84.

Here, petitioner's claim, even if it were properly before us, clearly falls far short of the *Bagley* standard. As we noted above, the Second Circuit found that, standing alone, James Robinson's testimony was enough to warrant a finding of guilt and Robinson's testimony must be considered in conjunction with that given by both Breon Kelly and Chameka Black (despite any of the petitioner's perceived inconsistencies) as well as with the physical evidence presented at trial. Taking all of this into consideration we find that it is highly unlikely that any additional trial testimony from George II would have been sufficient to "undermine confidence in the outcome" of the petitioner's case or that the result would have been different. Accordingly, due to the overwhelming evidence of guilt on the record in this case, the petitioner is clearly not entitled to relief under *Brady v. Maryland* and its progeny because the allegedly evidence withheld does not meet the definition of "material evidence" as articulated in those cases.

### IV.
#### CONCLUSION AND RECOMMENDATION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal *habeas* relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 2nd day of July, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE